IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY SEAN GREENLAW,

    Plaintiff,

v.

JEAN HILL, DR. GREG SHOOK,
L. WOOD, A. SHELL, and A. HENDRICK,

    Defendants.

Civil No. 05-1448-BR

OPINION AND ORDER

TIMOTHY GREENLAW
752 SE Pine Street
Roseburg, OR 97470

    Plaintiff *Pro Se*

HARDY MYERS
Attorney General
LEONARD WILLIAMSON
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301

    Attorneys for Defendants

1 - OPINION AND ORDER -

**BROWN, Judge.**

Plaintiff, a former inmate at the Snake River Correctional Institution ("SRCI"), brings this civil rights action pursuant to 42 U.S.C. § 1983 *pro se*. Currently before the Court is Defendants' Motion for Summary Judgment (#40). Plaintiff was advised of federal summary judgment standards by order (#17) of this Court issued on March 29, 2006. For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED,** and this action is **DISMISSED,** with prejudice.

## BACKGROUND

Plaintiff alleges Defendants violated his freedom-of-religion rights under the First Amendment and his Eighth Amendment right to be free from cruel and unusual punishment. In particular, Plaintiff alleges Defendants failed to provide an order for pureed Kosher food items for a period of one year after Plaintiff's teeth were extracted due to gum disease and failed to provide Plaintiff dentures in a timely manner. Plaintiff names as Defendants SRCI Superintendent Jean Hill, Dr. Gregory Shook, Chief Dental Officer of the Oregon Department of Corrections ("ODOC"), and Lisa Wood, Alicia Shell, and Arlene Hendrick, all Dental Assistants at SRCI.

Defendants move for summary judgment and assert Plaintiff fails to state an Eighth Amendment claim and, in any event, Defendants contend they are entitled to qualified immunity.

2 - OPINION AND ORDER -

Defendants also argue that Superintendent Hill cannot be held liable in her supervisory position.

## SUMMARY OF FACTS

Edentulism is the human condition to be without teeth. Defendants provide evidence that even without teeth to masticate or chew, a persons's nutritional requirements can be met with a soft diet.

Inmates in the custody of ODOC are routinely placed on a waiting list for dentures. Once teeth are extracted, a six-month healing period is recommended before proceeding with the fitting for dentures. According to Defendants, the average waiting time from extraction of teeth to denture fitting is 20 - 24 months. Plaintiff states that the waiting list was only 6 to 8 months at the time of his extractions, but it became much greater as time passed.

In August and September 2003, all of Plaintiff's teeth were extracted because of extensive periodontal disease. Plaintiff states he requested a soft diet at the time his teeth were extracted and repeated that request over the ensuing months. On April 2, 2004, Dr. Shook ordered a mechanical, *i.e.*, blended, soft diet for Plaintiff. That order, however, failed to make it into Plaintiff's dental chart.

On May 25, 2004, Plaintiff had a conversation with SRCI Nurse Manager, Vicki Clark, RN. Plaintiff stated he was satisfied with

3 - OPINION AND ORDER -

his Kosher Menu trays except that he was unable to chew the supplemental raw fruits and vegetables. Following this meeting, SRCI Food Services began cooking the raw fruits and vegetables to soften them for Plaintiff's consumption. This method, however, rendered the food unpalatable to Plaintiff.

On June 25, 2004, Plaintiff again met with Nurse Clark. Plaintiff requested the fruits and vegetables be pureed. By June 29, 2004, SRCI obtained blenders to puree Plaintiff's Kosher raw foods. The SRCI Food Services Manager required a diet order from Health Services to proceed with the pureeing of Plaintiff's raw fruits and vegetables on the Kosher Menu. The medical order was written on September 1, 2004. Plaintiff's try-in dentures were ready in January of 2005.

## **LEGAL STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

4 - OPINION AND ORDER -

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.*

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

### I. Qualified Immunity

The defense of "qualified immunity" protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This rule "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Burns v. Reed*, 500 U.S. 478, 494-95 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The required first step in a qualified immunity analysis "is to consider the materials submitted in support of, and in

5 - OPINION AND ORDER -

opposition to, summary judgment, in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

### A.   Eighth Amendment - Cruel and Unusual Punishment

#### 1.   Delay in Providing Dentures

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish the deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993); *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989), *cert. denied*, 493 U.S. 1056 (1990).

Deliberate indifference to a prisoner's serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of deliberate indifference involves an examination of two elements: a sufficiently serious medial need based on an objective test, and a sufficiently culpable state of

mind on the part of the prison official, which is a subjective test. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A serious medical need exists if the lack of treatment "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing *Estelle*, 429 U.S. at 106), *overruled on other grnds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *See Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990). Serious medical needs may include dental care. *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Indifference may be shown "when prison officials deny, delay, or intentionally interfere with medical treatment." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). A denial, delay, or intentional interference with

medical care must be more than an "isolated occurrence" or "exception." *McGuckin*, 974 F.2d at 1060. A finding of inadequate treatment, malpractice, or negligence does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106. The failure of prison officials to provide dentures can constitute deliberate indifference. *Hunt*, 865 F.2d at 200.

Here, Plaintiff complains that it took 16 months from the time his teeth were extracted until his try-in dentures were ready. This time period includes the 6-month waiting period between tooth extraction and readiness for creating molds for the dentures. When Plaintiff requested the dentures be provided immediately, he was informed he was on the waiting list and was not being ignored. Plaintiff does not present evidence that the delay in obtaining the dentures caused him any physical harm.

This case is unlike *Hunt v. Dental Dep't*, *supra*, in which the Ninth Circuit reversed summary judgment. There, the inmate alleged that prison officials were aware the loss of his dentures was causing him severe pain and permanent physical damage and still did not act. The inmate filed a grievance complaint claiming that, without his dentures, his teeth were breaking off and his gums were bleeding and infected. The inmate also complained that he suffered pain and weight loss due to his inability to eat properly and that his request to be placed on a soft food diet had been denied. Plaintiff does not allege similar

8 - OPINION AND ORDER -

harm here.

Accordingly, even if Plaintiff's allegations are taken as true, and all inferences are construed in his favor, Plaintiff fails to demonstrate any Eighth Amendment violation on this record. Moreover, there is not any evidence Defendants behaved in a medically unacceptable manner under the circumstances or that they chose to deny dentures to Plaintiff in conscious disregard of a substantial risk to Plaintiff's health. When the facts as alleged do not support a constitutional violation, the qualified immunity analysis ceases, and Defendants are entitled to judgment as a matter of law.

### 2. Delay in Providing Pureed Kosher Food Items

To prevail on an Eighth Amendment conditions of confinement claim, a plaintiff must show a sufficiently serious deprivation and deliberate indifference on the part of the prison officials to that deprivation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.*

Prison food need not be "tasty or aesthetically pleasing," it must be "adequate to maintain health." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Inmates have the

9 - OPINION AND ORDER -

right, however, to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion. *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).

Plaintiff complains that one year passed from the time his teeth were extracted until Defendants began pureeing his kosher food items. The record indicates, however, that Plaintiff received adequate caloric intake during the time he was without teeth. The Kosher diet provided to Plaintiff, less those food items Plaintiff identified to health services that he could not chew, provided him no less than 2650 calories per day.

When Plaintiff complained and brought to the attention of medical staff that he could not eat the supplemental fruits and vegetables served in addition to the Kosher meals, prisoner staff began looking for a solution. First, staff attempted to cook the food items to soften them, a solution which proved unpalatable to Plaintiff. Staff then purchased separate blenders dedicated to Kosher meal preparation to puree Plaintiff's supplemental fruit and vegetables. Confusion about the existence of a soft-meal order from the Health Services Department did delay the eventual use of the blenders, but the issue was corrected by entry of a formal written order on September 2, 2004.

Defendants' delay in ordering the soft diet and the delay in executing the soft diet order did not cause harm to Plaintiff. The diet Plaintiff could consume without teeth

10 - OPINION AND ORDER -

provided adequate caloric intake and satisfied the dietary laws of Plaintiff's religion. Accordingly, no constitutional violation occurred, and Defendants are entitled to judgment as a matter of law on this claim.

### B. First Amendment Freedom of Religion - Delay in Providing Pureed Kosher Food Items

In their Memorandum in Support of Summary Judgment, Defendants characterize Plaintiff's allegations concerning the delay in ordering his Kosher food pureed in terms of an Eighth Amendment violation. In his Complaint, however, Plaintiff alleges the delay also amounted to a violation of his freedom-of-religion rights under the First Amendment.

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., Amend. I. Prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The Supreme Court recognizes, however, that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. *Id.*; *McElyea*, 833 F.2d at 197..

Prison regulations alleged to infringe on the religious exercise right must be evaluated under the reasonableness test set

11 - OPINION AND ORDER -

forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *O'Lone*, 382 U.S. at 349; *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's recent decision in *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997), invalidated the Religious Freedom Restoration Act and restored the reasonableness test as the applicable standard in free exercise challenges brought by prison inmates). In *McElyea*, the Ninth Circuit held that "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." 833 F.2d at 198.

Plaintiff alleges his freedom-of-religion rights were violated from the time his teeth were extracted until the order to puree his supplemental kosher food was formally entered. In fact, however, Defendants provide evidence that Plaintiff received Kosher meal trays throughout that period. Moreover, the record establishes the Kosher meal trays provided sufficient nutritional value to sustain Plaintiff's good health absent the supplemental raw fruits and vegetables. As such, the delay in pureeing Plaintiff's supplemental kosher fruits and vegetables did not rise to the level of a First Amendment violation, and Defendants are entitled to judgment as a matter of law on Plaintiff's second claim for relief.

forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *O'Lone*, 382 U.S. at 349; *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's recent decision in *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997), invalidated the Religious Freedom Restoration Act and restored the reasonableness test as the applicable standard in free exercise challenges brought by prison inmates). In *McElyea*, the Ninth Circuit held that "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." 833 F.2d at 198.

Plaintiff alleges his freedom-of-religion rights were violated from the time his teeth were extracted until the order to puree his supplemental kosher food was formally entered. In fact, however, Defendants provide evidence that Plaintiff received Kosher meal trays throughout that period. Moreover, the record establishes the Kosher meal trays provided sufficient nutritional value to sustain Plaintiff's good health absent the supplemental raw fruits and vegetables. As such, the delay in pureeing Plaintiff's supplemental kosher fruits and vegetables did not rise to the level of a First Amendment violation, and Defendants are entitled to judgment as a matter of law on Plaintiff's second claim for relief.

## II. Respondeat Superior

Finally, Plaintiff names Superintendent Jean Hill as one of the Defendants in this action. Plaintiff did not demonstrate, however, that Superintendent Hill was personally involved the alleged deprivation of his rights, or that there was a sufficient casual connection between her alleged wrongful conduct and the alleged deprivation. *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989); *see also Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691-94 (1978) (it is well established that § 1983 does not impose liability upon state officials for the acts of their subordinates under a *respondeat superior* theory of liability). Accordingly, Defendant Hill is entitled to judgment as a matter of law.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#40) and **DISMISSES** this action, with prejudice.

IT IS SO ORDERED.

DATED this 27th day of June, 2007.

_____
ANNA J. BROWN
United States District Judge

13 - OPINION AND ORDER -